# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTY A. DOWNING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-28-RAW-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Christy A. Downing requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on March 18, 1967, and was forty-four years old at the time of the administrative hearing. She has a high school education and past relevant work as a cashier, home health aide, and receptionist (Tr. 30). The claimant alleges that she has been unable to work since June 1, 2008 due to chronic obstructive pulmonary disease (COPD) (Tr. 167).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-05, on December 15, 2009. Her application was denied. ALJ Michael A. Kirkpatrick conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated July 22, 2011 (Tr. 9-17). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step two of the sequential evaluation. He found that the claimant had the medically determinable impairments of COPD, hypertension, anemia, anxiety, depression, and obesity. However, the ALJ also found that the claimant's impairments were not severe as they did not cause more than a minimal effect

on the claimant's ability to work. Thus, the ALJ determined that the claimant was not disabled (Tr. 31-32).

## Review

The claimant contends that the ALJ erred in the following ways: i) finding that claimant had no severe impairment or combination of impairments at step two, ii) failing to properly analyze the claimant's credibility, and iii) failing to properly develop the record. The undersigned Magistrate judge is not persuaded by the claimant's arguments.

In February 2006, the claimant presented at the Christian Free Medical Center complaining that she fell during a coughing spell (Tr. 348). In October of the same year, the claimant presented with complaints of coughing and wheezing, and mentioned that she had "been under a lot of stress" and anxiety (Tr. 347). The claimant continued to complain of coughing and wheezing throughout 2007 (Tr. 343-346).

The claimant presented to the Eastern Oklahoma Medical Center Emergency Department on numerous occasions for various complaints. On November 17, 2008, the claimant presented with complaints of vomiting and coughing and was diagnosed with viral gastroenteritis (Tr. 248). She also presented with complaints of an injured tailbone and abdominal pain in 2006-2007 (Tr. 249, 256).

The claimant began receiving treatment at the Sequoyah County Health and Wellness Center in July 2007 (Tr. 297). While she was present for a routine examination, it was noted that the claimant "has mood swings, depressive symptoms periodically" and increased stress levels (Tr. 294). To treat her depression, the claimant was on Prozac (Tr.

274, 277, 279, 286, 291, 296). However, the claimant's depression was noted to be controlled with medication (Tr. 274). The claimant was noted to be suffering from a cough that had lasted two days, dyspnea, and wheezing in February 2009 (Tr. 274). One month later, she was noted to have left sternal border chest wall tenderness, and she was diagnosed with bronchitis (Tr. 273). By December 2009, the claimant was noted to have suffered with a "hard cough" for two years, and while her physician wanted to refer her to a specialist, treatment notes reflect that the claimant was unable to pay for such a visit (Tr. 269). On December 17, 2009, the treatment notes reflect that the claimant was "much improved" as her cough was better, her lungs were clear, and she had no chest wall tenderness (Tr. 268).

The claimant received treatment from Dr. Sharad Swami on April 28, 2011 at which time she complained of shortness of breath, anemia, COPD, and anxiety (Tr. 337). Her symptoms at that time included dyspnea, cough, wheezing, anxiety, and depression (Tr. 338). Dr. Swami's diagnoses included iron deficiency anemia, essential hypertension, chronic obstructive asthma, and COPD (Tr. 339). Following that appointment, Dr. Swami completed a Pulmonary Medical Source Statement in which he identified the claimant's symptoms as shortness of breath, wheezing, rhonchi, episodic acute bronchitis, fatigue, palpitations, and coughing (Tr. 333). Dr. Swami further opined that the claimant could sit and stand/walk, respectively, for about four hours in an eight-hour workday, occasionally lift less than ten pounds, frequently twist, occasionally stoop, crouch, and squat, and rarely climb ladders and stairs (Tr. 334-35). Finally, Dr. Swami

found that the claimant should avoid all exposure to extreme cold, extreme heat, high humidity, cigarette smoke, soldering fluxes, solvents and cleaners, fumes, odors, and gases, dust, and chemicals (Tr. 335).

State reviewing physician Dr. Sharon Taber, Ph.D. completed a Psychiatric Review Technique in which she found that there was insufficient evidence to determine whether the claimant suffered from a medically determinable mental impairment (Tr. 298, 310). Several other state reviewing physicians found that the claimant's physical impairments were not severe based on a review of the medical evidence as of the date last insured (Tr. 312, 316).

The claimant first argues that the ALJ failed to perform a proper step two analysis, and focuses her argument on two aspects of her medical conditions: 1) her diagnosis of COPD and 2) the side effects of her medications. A claimant has the burden of proof at step two of the sequential analysis to show that she has an impairment severe enough to interfere with the ability to work. *Bowen v. Yuckert*, 482 U.S. 137 (1987). This determination "is based on medical factors alone, and 'does not include consideration of such vocational factors as age, education, and work experience.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004), *quoting Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Although a claimant "must show more than the mere presence of a condition or ailment[,]" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), the claimant's step-two burden only requires a "de minimis" showing of impairment. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997), *citing Williams*, 844 F.2d at

751. A finding of non-severity may be made only when the medical evidence establishes a slight abnormality or a combination of slight abnormalities which would not have any more than a minimal effect on an individual's ability to work. *Hinkle*, 132 F.3d at 1352.

In this regard, the ALJ found that the claimant's medically determinable impairments (or combination thereof) did not significantly limit her ability to perform basic work-related activities. Focusing on the claimant's arguments, the ALJ properly noted that the claimant's diagnosis of COPD prior to December 31, 2009, *i. e.*, her date last insured, was "mild", chest x-rays from 2009 were clear, pulse oximetry was within normal limits, and her lungs were consistently normal on examination (Tr. 13). Moreover, the claimant points to no evidence prior to her date last insured that would suggest that the claimant's COPD was severe. The claimant also raises an argument that the ALJ failed to consider the side effects of claimant's medications. As the Commissioner argues, however, that issue was never raised at the administrative hearing, and the claimant never complained of side effects of medication (Tr. 205, 214). Thus, there was no evidence presented that suggested that the claimant suffered any negative impacts from medications that she was taking prior to her date last insured.

The claimant next argues that the ALJ failed to properly analyze her credibility. Deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any

clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

Contrary to the claimant's argument, the ALJ did link his credibility findings with the medical evidence of record. The ALJ thoroughly summarized the claimant's testimony and the relevant medical evidence, and found that the claimant's statements were not credible. In making this finding, the ALJ noted that:

> The medical evidence of record prior to the date last insured simply does not support the claimant's allegations as to the frequency and severity of her symptoms. Her COPD was assessed as 'mild.' Repeat chest x-rays were unremarkable, and her lungs and pulse oximetry were within normal limits.

(Tr. 16). Further, the ALJ properly noted the claimant's testimony that she had blackout episodes caused from coughing and an incident from 2006 where that statement was supported by the medical record. The ALJ also properly noted, however, that the claimant continued working for more than two years following that incident. For the reasons discussed above, the undersigned finds that the ALJ properly analyzed the claimant's credibility and linked his findings with substantial evidence as required by *Kepler*. 68 F.3d 387. The claimant's argument on this point must also fail.

Finally, the claimant argues that the ALJ failed to fully develop the record by failing to do the following: i) order further consultative mental examinations of the claimant; ii) elicit further testimony from the claimant at the administrative hearing regarding her impairments; iii) ask Dr. Rogow to review his treatment notes from the relevant time period, *i. e.*, prior to December 31, 2009; and iv) request medical records mentioned by the claimant's attorney at the administrative hearing. It is true that a social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993), *citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, "it is not the ALJ's duty to be the claimant's advocate[,]" but "the duty is one of inquiry and factual development. The claimant continues to bear the ultimate burden of proving that she is disabled under the regulations." *Id.* at 361 [citations omitted].

First, the ALJ has broad latitude in deciding whether or not to order a consultative examination. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). "When the claimant has satisfied his or her burden" of presenting evidence suggestive of a severe impairment, "then, and only then, [it] becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment." *Id*. at 1167. A consultative examination also may be required if there is

a direct conflict in the medical evidence, the medical evidence is inconclusive, or when additional tests are needed to explain a diagnosis already in the record. *Id*. at 1166 [citations omitted]. In this case, the claimant never alleged a mental impairment, and the ALJ noted that while the medical evidence did show that she was being treated for depression with medication, her depression was noted to be well-controlled (Tr. 274-75). Further, claimant's counsel never raised her depression as an issue requiring further development, nor did counsel ever request that the ALJ order a consultative examination regarding the claimant's mental impairments. *Hawkins*, 113 F.3d at 1168 (noting that without a request by counsel, a duty will not be imposed on the ALJ to order an examination unless the need is clearly established in the record).

Next, the claimant argues that the ALJ should have elicited further testimony regarding her impairments at the administrative hearing. This argument, too, must fail. While it is true that "every ALJ has 'a basic obligation . . . to ensure that an adequate record is developed during the disability hearing consistent with the issues raised[,]'" *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994), *quoting Henrie*, 13 F.3d at 360-61, that "duty is not a panacea for claimants . . . which requires reversal in any manner where the ALJ fails to exhaust every potential line of questioning." *Id.* The hearing transcript in this case reveals that the claimant testified about why she quit working, the medications she was taking prior to her date last insured, the impact of her COPD on her daily life and ability to do chores, and her symptoms (Tr. 22-41). Thus, the undersigned finds that the ALJ was apprised of the relevant facts of the claimant's case.

The claimant also argues that the ALJ should have recontacted the claimant's physician Dr. Rogow for a review of his treatment notes in order to clarify "ambiguities that may exist" regarding the claimant's COPD. The ALJ is not required to recontact a physician when the evidence received "is consistent and there is sufficient evidence . . . to determine whether [a claimant] is disabled." 20 C.F.R. 404.1520b(a). The claimant points to no evidence in the record which is inconsistent with Dr. Rogow's treatment notes, and the undersigned has found none. Thus, the claimant has not demonstrated that the ALJ erred by not contacting Dr. Rogow for further information.

Finally, the claimant argues that the ALJ should have requested medical records that may have existed relevant to the time period during which claimant was insured. But, as the Commissioner argues, the claimant fails to demonstrate that the medical records she references in her brief even exist. The claimant's attorney at the administrative hearing stated that while they had been "trying to track down some [medical] records[,]" they had not "been able to find anything as of yet," but hoped that they would be able to "track something down" with a little more time (Tr. 40). Further, the claimant fails to identify *any* records that existed during the relevant time period. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) ("We are not, however, persuaded by Mr. Madrid's allegation that the ALJ committed legal error by failing to request treatment notes or records generated after May 2003. Mr. Madrid's claim is simply too general; we do not know if the records he thinks the ALJ should have obtained are pertinent or available."). Moreover, the ALJ left the record open for 30 days in order

to allow the claimant's attorney additional time to attempt to locate additional medical records (Tr. 40-41). Therefore, the undersigned cannot find that the ALJ committed reversible error for failing to obtain medical evidence that may or may not exist.

Because substantial evidence supports the ALJ's decision as outlined above, the undersigned Magistrate Judge RECOMMENDS that the decision of the Commissioner be AFFIRMED.

## Conclusion

As set forth above, the undersigned Magistrate Judge PROPOSES that correct legal standards were applied by the ALJ and the decision of the Commissioner is therefore supported by substantial evidence. Accordingly, the undersigned RECOMMENDS that the decision of the Commissioner be AFFIRMED. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2014.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma